**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **FREDERICK BAILLARGERON** | : | |
| | : | |
| ***Plaintiff*** | : | |
| | : | |
| **V.** | : | **CA No. 06-172ML** |
| | : | |
| **CITY OF NEWPORT, et al** | : | |
| | : | |
| ***Defendants*** | : | |

## DEFENDANTS' PRETRIAL MEMORANDUM OF LAW

### I. FACTS EXPECTED TO BE PROVEN AT TRIAL

On May 2, 2004, the plaintiff was arrested and charged with disorderly conduct, simple assault and resisting arrest. His arrest occurred during the procession of the National Police Parade which was being held in Newport, Rhode Island. Previous to his arrest, the plaintiff walked the parade route carrying a sign which read "Middletown and Newport Police Unfair" and on the other side of the sign "Laugh at R.I. Legal System It's A Joke."

During the parade, the plaintiff, after first walking down the middle of the street in the parade route, set himself on the parade route by City Hall in front of a reviewing booth which was set up for dignitaries and various officials. The plaintiff and his sign blocked the view of this booth and a Cox Cable camera. The plaintiff was observed to yell at participants in the parade in an attempt to get them to see his sign.

Sergeant Costa and Officer Spellman asked the plaintiff to move away from the spectator's booth and camera and lower his sign so spectators lining the streets could watch the parade. After initially refusing to do so, the plaintiff complied and walked away from the booth but still remained on the parade route.

Minutes after the initial contact with the officers, another officer, (Shea) who was off duty but assisting with the parade, contacted Officer Spellman to state that plaintiff was blocking the view of spectators and jumping into the street further up the parade route. Officer Spellman responded to the area and stood by as an elderly woman politely asked plaintiff to step back so that she and others could see the parade. Plaintiff did not comply with the woman's request so Officer Spellman approached plaintiff, tapped him on the shoulder and also asked him to move out of the way so that spectators could see the parade. Plaintiff initially ignored Officer Spellman and raised his sign higher in the air. Plaintiff then turned suddenly into Officer Spellman elbowing him in the mouth while yelling "I don't have to leave." Officer Spellman ordered the plaintiff to "get on the ground." The plaintiff refused and when Officer Spellman tried to direct him to the ground by using his hands, plaintiff started to struggle. Detective Shea assisted in bringing the plaintiff to the ground and handcuffing him.

The plaintiff was then walked to a cruiser by Sergeant Costa and along the way began to yell and shout in a disrupting manner. He was taken to the station and charged with the offenses set forth above. During the booking process he complained of pain to his left hand and/or wrist. He was asked if he wanted to be taken to Newport Hospital but he refused this offer.

Thereafter, the travel of this matter is somewhat murky. On July 9, 2004, the plaintiff pled nolo to the charge of resisting arrest and received six months probation from District Court Judge Gorman. As a result of his plea, the City of Newport dismissed the simple assault charge and the disorderly conduct charge. However, on July 12, 2004, the plaintiff filed an "appeal transmittal" notice in the District Court. The simple assault and disorderly conduct charge were thus refiled and transferred to the Superior Court along with the appeal from plaintiff's plea to the resisting arrest charge. It should be noted that the plaintiff did not seek to withdraw his plea

of nolo. Instead, the Superior Court just docketed the charges and the plaintiff eventually received a jury trial on all three (3) charges. A jury subsequently acquitted the plaintiff of all of the charges.

It should also be noted that the plaintiff has had numerous contacts with the Newport Police Department. On December 9, 2002, the plaintiff authored a letter to then Chief of Police Golden. The letter contains profanities and was perceived as threatening by the police department. On December 18, 2002, the Department received another letter from the plaintiff which was also perceived as threatening and contained profanities. On April 30, 2004, the plaintiff wrote a third letter in which he called one officer by a profane and derogatory name.

On May 3, 2004, the plaintiff authored and sent a letter to the Rhode Island Attorney General. In the letter, the plaintiff states as follows:

> "Surely you seen or heard of people being pushed past their limit of rational thinking and that tragic consequences which result ??? While I'm not sure how close I am to reaching that breaking point, I do know that the last 5-6 years of all this bul… are taking a huge toll on me, -both physically and mentally!"
>
> "All too often, people look back after a tragedy takes place & say –Gee maybe we should've helped this guy, who's life was destroyed by a bunch of crooked cops & the crooked legal system they represent."
>
> "So here's your chance to do something before it's too late! I hope you do."
>
> "While I can't say I wouldn't purchase a gun illegally through the black market if forced to do so, I believe allowing me to carry a registered firearm would be in everyone's best interest-instead."

Defendants intend to introduce this letter along with the other letters at the trial.

## II. POTENTIAL WITNESSES AND A SUMMARY OF THEIR EXPECTED TESTIMONY

Pursuant to CM/ECF Filing Rules and Regulations, defendants' witness list and summary of expected testimony is being filed conventionally, under separate cover.

## III. EXHIBITS

Pursuant to CM/ECF Filing Rules and Regulations, defendants' Exhibit list is being filed conventionally, under separate cover.

## IV. APPLICABLE SUPPORTING LAW

### *A. Excessive Force – Count I & III*

In Count I and III, plaintiff seeks to recover for the alleged use of excessive force by the officers in violation of his state and federal constitutional rights. There is a three-part test for excessive force claims under *§ 1983*.[1] The plaintiff must show: (1) a significant injury; (2) resulting directly and only from the use of force that was clearly excessive to the need, and (3) the excessiveness of the force was objectively unreasonable. *Reese v. Anderson, 926 F.2d 494, 500 (5th Cir. 1991).* Plaintiff's claim that the officers used excessive force in the course of making an arrest is subject to the objective reasonableness standard governing the Fourth Amendment. *Graham v. Connor, 490 U.S. 386, 388 (1989)*.

The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight. When judging reasonableness, it must be factored in that "police officers are often forced to make split second judgments in circumstances that are tense, uncertain, and rapidly evolving, about the amount of force that is necessary in a particular situation." *Id. at 396*.

---

[1] In addition to plaintiff's *§ 1983* claim for excessive force, plaintiff also cites to Article 1, sec. 2 & 6 of R.I. Constitution in Count I and seeks to recover for the alleged violation of his state constitutional rights. It is questionable in the first instance whether plaintiff has a direct cause of action under R.I. Constitution. *See Bandoni v State, 715 A.2d 580, 597 (R. I. 1998)*. Nevertheless, even if such a right exists, it would mirror plaintiff's federal claim and thus it is academic whether such a direct cause of action exists. *Pimental v. Department of Transp., 561 A.2d 1348, 1350 (R.I. 1989) (affirming that R.I. constitutional guarantees generally mirrors protections afforded by Fourth Amendment and identifying limited cases where increase protections granted).*

In addition, this standard allows for evidence of what is known to the police officer at the time the force is applied. The knowledge of the police officer forms part of the "facts and circumstances attendant to the decision to use the particular degree of force." *See Senra v. Cunningham, 9 F.3d 168 (1st Cir. 1993).*

In this matter, defendants' first defense is factual. Simply put, defendants dispute the plaintiff's rendition to the events as outlined in the plaintiff's complaint. As described by the defendants, the plaintiff's claim of excessive force must fail since, given the facts of this case, the defendants used a reasonable amount of force during the arrest of the plaintiff. *Jennings vs. Pare, 205 U.S. Dist. Lexis 18214 at 17 (D.R.I. August 24, 2005 citing Isom vs. Warren, 360 F.3d 7, 12 (1st Cir. 2004) (Marc, see if the Jennings case has an actual cite)*

*B. Count II and III – First Amendment Rights*

Plaintiff claims that the defendants' actions also amounted to a violation of his First Amendment right to free speech. Plaintiff thus also seeks to recover under R.I. constitution and *§ 1983* for the violation of his constitutional right to free speech.[2]

The First Amendment declares in part that "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people peaceably to assemble." U.S. Const. amend. I. Even though both the Rhode Island and the United States Constitutions protect the rights of individuals to disseminate their views on various matters, "even protected speech is not equally permissible in all places and at all times." *Barrington v. Blake, 568 A.2d 1015, 1018 (R.I. 1990) quoting Cornelius v. NAACP Legal Defense and Educational Fund, Inc., 473 U.S. 788, 799*

---

[2] Once again, plaintiff seeks to maintain a direct cause of action for the alleged violation of his State constitutional right to free speech. *Count II.* Although it is questionable whether such a direct cause of action for the violation of the right to free speech has been recognized by the R.I. Supreme Court, *Bandoni v State, 715 A.2d 580, 597 (R. I. 1998),* because the extent of such a right nevertheless, mirrors the federal guarantees, the Court need not reach this issue. *Barrington v. Blake, 568 A.2d 1015, 1018 (R.I. 1990) (Rhode Island's 1986 constitution does not afford more extensive protection to the picketers than the United States Constitution presently affords).*

*(1985)*. It is well established that, notwithstanding the presence of the First Amendment, expressive activity may be subject to reasonable time, place, and manner restrictions. *Id.* *Heffron v. International Society for Krishna Consciousness*, *452 U.S. 640, 647 (1981)*. As explained by the Supreme Court, "the First and Fourteenth Amendments have never been thought to give absolute protection to every individual to speak whenever or wherever he pleases, or to use any form of address in any circumstances that he chooses." *Cohen v. California*, *403 U.S. 15, 19 (U.S. 1971)*. Restrictions on such exercises of free speech are valid "provided that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Vacca v. Barletta*, *933 F.2d 31, 33-34 (1st Cir. 1991)*. *See also* *Blake*, *568 A.2d at 1019.*

In the instant case, the Court is faced with competing First Amendment rights. Those possessed by the participants and spectators of the parade, *Hurley v. Irish-American Gay, Lesbian & Bisexual Group,* *515 U.S. 557, 569 (U.S. 1995) ("It is equally well-recognized that the word "parade" to indicate marchers who are making some sort of collective point, not just to each other but to bystanders along the way"),* and those claimed by plaintiff.

In the instant case, defendants submit in the first instance that plaintiff's First Amendment rights were not violated because he was granted a reasonable time, place and manner opportunity to express his views without interfering and infringing upon the First Amendment rights of those participating and viewing the parade. In particular, he was allowed to continue his protests as long as he did not interfere with the parade. In addition, defendants submit that plaintiff's exercise of his First Amendment rights had no bearing on defendants'

action in the instant case. Rather, as the evidence at trial will make clear, it was only when plaintiff engaged in the criminal act of striking the police officer that he was arrested. It is thus widely recognized that "the First Amendment does not insulate individuals from criminal sanction merely because they are simultaneously engaged in expressive activity." *Papineau v. Parmley, 465 F.3d 46 (2d Cir. 2006) citing Cox v. Louisiana, 379 U.S. 536, 554 (1965).*

*C. Negligent Training and Supervision – Count IV*

In Count IV, plaintiff cites a claim against the City of Newport for its alleged failure to properly train and supervise.[3] In order to maintain a claim against a municipality based upon the municipality's alleged failure to train, a plaintiff must establish that "1) there is a *constitutional violation* by a municipal employee and 2) the violation can be said to been *caused* by a lack of proper training." *Britton, 901 F.Supp. at 450 (emphasis added) citing Collins v. City of Harker Heights, 503 U.S. 115, 122-25 (1992).* Thus, "in order to have a viable *§ 1983* claim against a municipality, a state actor must first commit an underlying *constitutional violation*." *Pittsley v. Warish, 927 F.2d 3, 9 n.4 (1st Cir. 1991) (emphasis added) citing Monell, 436 U.S. at 690-91 (a finding that a state actor violated an individual's constitutional right is prerequisite to finding a municipality liable under § 1983). See also City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (if a state actor does not impose a constitutional injury, "it is inconceivable that [the City] could be liable"); Pitchell v. Callan, 13 F.3d 545 (2nd Cir. 1994); Temkin v. Frederick County Comm'rs, 945 F.2d 716, 724 (4th Cir. 1991) cert. denied, 502 U.S. 1095 (1992) (holding that a claim of inadequate training cannot be established under § 1983 absent a finding of a constitutional violation by the person being supervised).*

---

[3] As an initial matter, plaintiff's Complaint does not specifically state whether he is bringing a state law claim for failure to train and supervise or whether he is seeking to maintain a claim *§ 1983*. Because plaintiff alleges that the City's actions amounted to "customs and policies" of the City, plaintiff presumptively is seeking to maintain a *§*

If a plaintiff succeeds in demonstrating the infliction of a constitutional injury by a state actor, the plaintiff must then also demonstrate: 1) that the municipality's failure to train or supervise that individual amounted to a "deliberate indifference" to the rights of persons with whom the police come into contact; 2) that the failure to train or supervise represents a "policy" for which the city is responsible; and 3) the policy actually *causes* the injury. *City of Canton, Ohio v. Harris, 489 U.S. 378, 389-90 (1989).* This standard is in tandem with the initial inquiry in all *§ 1983* claims which requires a showing that: "1) . . . the conduct complained of was committed by a person acting under color of state law; and 2) . . . this conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds Daniels v. Williams, 474 U.S. 327, 334 (1986).*

In the instant case, even assuming the violation of plaintiff's constitutional rights, there is no evidence that the Town failed to properly train the Defendant police officers and that this failure amounted to "deliberate indifference". *See Flowers v. Fiore, 239 F.Supp.2d 173, 179 (D.R.I. 2003) quoting Guadreault v. Municipality of Salem, Mass., 923 F.2d 203, 209 (1st Cir. 1990) ("summary judgment is manifestly appropriate where plaintiff fails to offer even a scintilla of evidence that the municipality failed to train its officers and that the failure to do so constituted deliberate indifference.")*

*D. Conspiracy to Violate Civil Rights –Count V*

In Count V, plaintiff seeks to maintain a claim against the individual officers based on the claim that they conspired to violate plaintiff's civil rights. A civil rights conspiracy is defined as "a combination of two or more persons acting in concert to commit an unlawful act, or to commit

1983 claim. To the extent Count IV is a state law claim, defendant reserves the right to supplement its Pretrial Memorandum accordingly.

a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another and an overt act that results in damages." Earle v. Benoit, *850 F.2d 836, 844 (1st Cir. 1988) (internal quotations omitted).* For the conspiracy to be actionable under *§ 1983*, Plaintiff must prove that "there [has] been, besides the agreement, an actual deprivation of a right secured by the Constitution and laws." Id. *See also,* Torres v. Superintendent of Police of Puerto Rico, *893 F.2d 404, 411 (1st Cir. 1989)* Proof of the conspiracy must be proved without speculation and conjecture. Id. Conspiracy allegations that are purely conclusory are not adequate to state a claim. Pigott v. Lynn Police Dept., *7 F.3d 218 (1st Cir. 1993).* Plaintiff has the burden of identifying the specific constitutional right that he claims was violated by the Defendants. Nieves v. McSweeney, *241 F.3d 46, 53 (1st Cir. 2001).*

The Seventh Circuit has further noted that:

> To be liable as a conspirator you must be a voluntary participant in a common venture, although you need not have agreed on the details of the conspiratorial scheme or even know who the other conspirators are. It is enough if you understand the general objectives of the scheme, accept them, and agree, either explicitly or implicitly, to do your part to further them.

Jones v. City of Chicago, *856 F.2d 985, 992 (7th Cir. 1988).*

*E. Chief Charles Golden's Supervisory Liability Under 42 U.S.C. 1983- Count VI*

Count VI of Plaintiff's Complaint seeks supervisory liability against Chief Charles Golden under *§ 1983.* Similar to municipal liability, supervisory liability under *§ 1983* may not be predicated on a theory of *respondeat superior*, but only on the basis of the supervisor's own acts or omissions. Aponte Matos v. Toldeo Davilla *135 F.3d 182, 192 (1st Cir. 1998).* Supervisory liability exists "only if (1) there is subordinate liability, and (2) the supervisor's action or inaction was 'affirmatively linked' to the constitutional violation caused by the subordinate." Id. "That affirmative link must amount to supervisory encouragement,

condonation, or acquiescence, or gross negligence amounting to deliberate indifference." *Id*. A supervisor must be "either a primary actor involved in, or a prime mover behind, the underlying violation." *Camilo-Robles v. Zapata, 175 F.3d 41, 43-44 (1999).* "[T]he supervisor's conduct must have "led inexorably to the constitutional violation." *Doe v. Dubeck, 2006 U.S. Dist. LEXIS 40429, 14-15 (D. Mass. 2006).*

In the instant case, defendants submit that there is no evidence to demonstrate an affirmative link between Chief Golden's actions and plaintiff's alleged injuries such to amount to supervisory encouragement, condonation, acquiescence or gross negligence which would amount to deliberate indifference.

*F. Assault and Battery – Counts VII, VIII and IX*

The plaintiff also seeks to maintain state law claims of assault and battery against defendants Robert Spellman, Patrick Shea and Joes Costa. Rhode Island law states that battery is "an act that was intended to cause, and does cause, and offensive contact with or unconsented touching of or trauma upon the body of another, thereby generally resulting in the consummation of the assault." *Fenwick v. Oberman, 847 A.2d 852, 855 (R.I. 2004) quoting Profitt v. Ricci, 463 A.2d 514, 517 (R.I. 1983).* The evidence will not support plaintiff's claim that the defendants are liable for assault and battery upon the person of the plaintiff.

A well-recognized "permitted" contact occurs when a police officer is performing his duties. As noted *infra*, a police officer can use reasonable amount of force to subdue an individual even if the officer is not acting in self-defense. *Sheehan v. West, 27 R.I. 84 (1905)*.[4] Such privileged contact relieves the officer from liability for assault and battery.

*G. False Imprisonment and False Arrest- Count XII*

[4] The Rhode Island Supreme Court has recognized the interrelationship between § 1983 and the common-law tort for assault and battery. *Dyson v. City of Pawtucket, 670 A.2d 233, 237 (R.I. 1996).*

In the instant case, plaintiff alleges that he was falsely arrested. In order to maintain a claim for false arrest and imprisonment under state law plaintiffs must prove by a preponderance of the evidence that:

1. the defendants intended to confine them;
2. the plaintiffs were conscious of the confinement;
3. the plaintiffs did not consent to the confinement; and
4. the confinement was not otherwise privileged.

*Beaudoin v. Levesque, 697 A.2d 1065, 1067 (R.I. 1997).* Plaintiffs must also demonstrate that they were detained without any legal justification. *Id.*

However, the finding of probable cause is the legal justification in this matter. "Probable cause exists when facts and circumstances within the arresting officers knowledge and of which he has reasonably trustworthy information or sufficient to warrant a man of reasonable cause and prudence in the belief that the defendant is committing or has committed a crime." *Floyd v. Farrell, 765 F.2d 1, 5 (1st Cir. 1985).*

Similarly, in order to maintain a claim under *§ 1983*,[5] plaintiff must establish that the officers lacked probable cause to detain him. Subjective intentions play no role in ordinary, probable cause fourth amendment analysis." *Whren v. United States, __ U.S. __, 116 S.Ct. 1769, 1774 (1996).* Rather an objective test must be applied. The question is whether another officer standing in the shoes of these defendants and having the same information these defendants had, would reasonably have come to the conclusion that there was probable cause to arrest and detain the plaintiffs. *Floyd, 765 F.2d at 5.* This determination must be made by viewing the totality of the circumstances. *Rivera v. Murphy, 979 F.2d 259, 263 (1st Cir. 1992).*

---

[5] In Count XII, which contains plaintiff's "False Imprisonment and False Arrest" claim, plaintiff does not allege that the defendants' actions amounted to a violation of plaintiff's constitutional rights. Nevertheless in his prayer for relief, plaintiff specifically asks the Court to declare as unconstitutional "the arrest," *inter alia*. Thus, to the extent plaintiff seeks to recover for the alleged violation of his Fourth Amendment rights stemming from his arrest, defendants offers the instant citations.

*H. Malicious Prosecution- Count X*

In order to establish a claim of malicious prosecution under Rhode Island law, Plaintiff must prove that 1) Defendants initiated a criminal proceeding against him; 2) with malice; 3) without probable cause; and 4) which terminated in Plaintiff's favor. *Rezendes v. Beaudette, 797 A.2d 474, 478-479, (R.I. 2002).* Actions for malicious prosecution are viewed with disfavor, therefore Plaintiff must establish the existence of malice and lack of probable cause by clear proof. *Clyne v. Doyle, 740 A. 2d 781, 782 (R.I. 1999)*. In the instant case, Plaintiff's claim for malicious prosecution must fail because the undisputed facts demonstrate that probable cause existed to charge Plaintiff with the Family Court petitions.

"[P]robable cause exists when facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a man of reasonable caution and prudence in the belief that the defendant is committing or has committed a crime." *Floyd v. Farrell, 765 F.2d 1, 5 (1st Cir. 1985)*. "[P]robable cause need not be tantamount to proof beyond a reasonable doubt.... Probability is the touchstone." *U.S. v. Grant, 218 F.3d 72, 75 (1st Cir. 2000) quoting United States v. Khounsavanh, 113 F.3d 279, 283 (1st Cir.1997).* Thus, "[t]he probable cause standard does not require the officers' conclusion to be ironclad, or even highly probable. Their conclusion that probable cause exists need only be reasonable." *U.S. v. Winchenbach, 197 F.3d 548, 556 (1st Cir. 1999).*

*I. Infliction of Emotional Distress- Count XI*

Plaintiff also claims that he suffered from emotional distress as a result of defendants' actions and thus seeks to recover under state law for the intentional infliction of emotional distress. In recognizing the tort of intentional infliction of emotional distress, the Rhode Island Supreme Court has generally followed the Restatement (Second) on Torts. *Curtis v. State*

*Department Children and their Families, 522 A.2d 203, 208 (R.I. 1987); Champlin v. Washington Trust Co., 478 A.2d 985, 989 (R.I. 1984)*. Thus, under Rhode Island law, in order to maintain an action for intentional infliction of emotional harm:

> (1) the conduct must be intentional or in reckless disregard of the probability of causing emotional distress, (2) the conduct must be extreme and outrageous, (3) there must be a causal connection between the wrongful conduct and the emotional distress, and (4) the emotional distress in question must be severe. *Champlin, 478 A.2d at 989.*

In addition, the Rhode Island Supreme Court has recognized the subjective nature of such claims for emotional distress and the possible hardship imposed on defendants in attempts to defend such claims. Thus, in order to maintain a claim for the intentional infliction of emotional distress, the plaintiff must also provide at least some proof of medically established physical symptomatology. *Curtis, 522 A.2d at 208; Champlin, 478 A.2d at 989. Hawkins v. Scituate Oil Co., Inc., 723 A.2d 771, 773 (R.I. 1999)*; *Vallinoto v. DiSandro, 688 A.2d 830, 838-40 (R.I.1997); Clift v. Narragansett Television L.P., 688 A.2d 805, 812-14 (R.I.1996).* The absence of such physical ailment is fatal to a plaintiff's claim for emotional distress. *Clift v. Narragansett Television L.P., 688 A.2d 805, 813 (R.I. 1996) citing Reilly v. United States, 547 A.2d 894 (R.I.1988)("In order for the plaintiffs to have avoided summary judgment, they were required to allege in their complaint and demonstrate not only extreme and outrageous conduct on the part of [defendant], but also the existence of resulting physical symptomatology); Marchetti v. Parsons, 638 A.2d 1047, 1052 (R.I.1994) (recovery for negligent infliction of emotional distress requires a showing of accompanied physical symptomatology); Reilly v. United States, 547 A.2d 894, 895 (R.I.1988) (under Rhode Island law, plaintiff must suffer physical symptomatology to recover damages for negligent infliction of emotional distress).*

The Rhode Island Supreme Court has also adopted the Restatement's high standard of what amounts to "extreme and outrageous conduct" sufficient to warrant damages for the infliction of emotional distress. It is first noteworthy that the issue of whether conduct is sufficiently "extreme and outrageous" to satisfy this standard, in the first instance, is one of law for the Court. *Fudge v. Penthouse International, Ltd., 840 F.2d 1012, 1021, cert. denied, 488 U.S. 821 (1988); Elias v. Youngken, 493 A.2d 158, 164 (R.I. 1985); Champlin, 478 A.2d at 990.* The Second Restatement explains that:

> "[i]t is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." *Restatement (Second) of Torts (1965), § 46, at comment (h).*

The "extreme and outrageous" standard has been described as an amorphous standard that necessarily varies from case to case. *Russell v. Salve Regina College, 890 F.2d 484, 488 (R.I. 1989), reversed and remanded on different ground, 499 U.S. 225.* The Restatement (Second) of Torts has thus provided guidance by cautioning that:

> it [is] not . . . enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. *Restatement (Second) of Torts (1965), § 46, comment (d).*

Courts therefore have rejected the notion that intentional or reckless conduct that causes severe emotional distress *ipso facto* constitutes extreme and outrageous conduct. *Fudge, 840 F.2d at 1021.* Rather, in order to meet the "extreme and outrageous" standard, a plaintiff must demonstrate that the defendant's conduct:

> has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an

average member of the community would arouse his resentment against the actor, and lead him to exclaim "Outrageous." *Restatement (Second) of Torts (1965), § 46, comment (d).*

*See also Swerdlick v. Koch, 721 A.2d 849, 863 (R.I. 1998).*

Satisfying the "extreme and outrageous" standard has proven to be a difficult task. *Fudge, 840 F.2d at 1021*. Consistent with the Restatement Torts, Courts have required that the adverse employment decision be "atrocious, and utterly intolerable in a civilized community." *Restatement (Second) of Torts (1965), § 46, at comment (d); Swerdlick, 721 A.2d at 863.* One court has explained that the standard requires either "a pattern of conduct that . . . has intended to cause or recklessly did cause severe emotional distress" or "a single, isolated activity" wherein a "public or quasi-public official has severely abused his discretion or a private individual has blatantly and severely harassed another." *Rawson v. Sears Roebuck & Company, 530 F.Supp. 776, 780 (D.Co. 1982).*

In *Rawson*, the plaintiff alleged that her employer of thirty-three years discharged her solely because of her age. *Id.* Despite recognizing a possible claim for age discrimination, the District Court for the District of Colorado dismissed the plaintiff's claim for intentional infliction of emotional distress. *Id.* The Court concluded that such an isolated incident, even with an impermissible basis, was not sufficiently extreme or outrageous to state a cognizable claim for intentional infliction of emotional distress. *Id*

*J. Qualified Immunity*

Notwithstanding their strong factual defense, defendants will also rely on the qualified immunity defense to the constitutional claims, as well as the state law assault and battery claim.[6]

---

[6] The First Circuit has recognized that Rhode Island case law recognizes a qualified immunity defense under state law analogous to the federal doctrine established by the United States Supreme Court in *Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). See Hatch v. Town of Middletown, 311 F.3d 83, 90 (1st Cir. 2002) citing Pontbriand v. Sundlun, 699 A.2d 856, 867 (R.I. 1997) and Ensey v. Culhane, 727 A.2d 687, 690 (R.I. 1999).* Thus, defendants

According to the Supreme Court, a two-part inquiry is made to determine the entitlement of a qualified immunity defense: (1) whether "the facts alleged show the officer's conduct violated a constitutional right" and (2) if so, whether that right was "clearly established" so that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Sauciar v. Katz*, 533 U.S. 194, 201-202 (2001).

The District Court of Rhode Island has stated that "the first step, in excessive force cases, focuses on whether the force used exceeded constitutionally permissible boundaries and the second step focuses on whether a reasonable officer, nevertheless, could have believed that the force used was lawful under the circumstances." *Jennings,* 2005 U.S. Dist. LEXIS 18214 at *11. Further, with an excessive force claim, under step one, the "inquiry focuses on whether the force used, in fact, was reasonable; whereas the step two inquiry focuses on whether the officer reasonably, albeit mistakenly, could have believed that the force used was lawful." *Jennings,* 2005 U.S. Dist. LEXIS 18214 at *29 citing *Saucier*, 533 U.S. at 204-206.

Based on the information and beliefs of the Newport Police officers, and their actions involved in the plaintiff's arrest, the municipal defendants did not exceed constitutionally permissible boundaries and even if they had, they could have reasonably believed that the force used was lawful under the circumstances. Objectively reasonable officers faced with the same situation as the Newport Police, could have believed that it was reasonable to use the same amount of force in arresting the plaintiff.

With respect to the state law assault and battery claim, the defendants will also argue that, notwithstanding its strong factual defense, it is again, protected under the qualified immunity doctrine. Although Rhode Island "has not yet expressly adopted the federal doctrine of qualified

---

submit that all the same reasons that justify granting defendants qualified immunity from plaintiff's federal claims likewise warrant a finding of qualified immunity from plaintiff's state law claims.

immunity, it strongly has suggested that it would be so inclined." *Jennings,* 2005 U.S. Dist LEXIS at *35. Even if Rhode Island adopted the "subjective good faith requirement" adopted by some other states in order to afford some sort of statutory or common law immunity to police officers, the Newport defendants would still be shielded from liability since the plaintiff has provided no evidence that Newport acted in bad faith when the police officers arrested the plaintiff. *Id.* at *36-37.

Defendants further submit that Chief Golden is entitled to qualified immunity from the claims brought against him based on his alleged supervisory liability. When defendants seek qualified immunity in the supervisory liability context, two prongs of the traditional three-pronged inquiry become more particularized. First, within the "clearly established" prong, in order "for a supervisor to be liable there must be a bifurcated 'clearly established' inquiry -- one branch probing the underlying violation, and the other probing the supervisor's potential liability." *Camilo-Robles v. Hoyos, 151 F.3d 1, 6 (1st Cir. 1998).* Thus, "the 'clearly established' prong of the qualified immunity inquiry is satisfied when (1 ) the subordinate's actions violated a clearly established constitutional right, and (2) it was clearly established that a supervisor would be liable for constitutional violations perpetrated by his subordinates in that context." *Id. citing Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 456 (5th Cir. 1994); Shaw v. Stroud, 13 F.3d 791, 801 (4th Cir. 1994)).*

The second change to the traditional qualified immunity inquiry occurs in the third prong, "objective legal reasonableness." When the underlying claim involves supervisory liability, a court must ask whether the supervisor "should reasonably have understood that his conduct jeopardized [the plaintiff's clearly established constitutional] rights. *Young v. City of Providence, 396 F. Supp. 2d 125, 132 (D.R.I. 2005) citing Camilo-Robles, 151 F.3d at 7.* Notably, even

though courts generally keep the qualified immunity analysis distinct from the merits analysis, the supervisory liability "test of objective legal reasonableness to some extent collapses the separate 'qualified immunity' and 'merits' inquiries into a single analytic unit." *Id.* Thus, the "Court's examination into objective legal reasonableness necessarily involves application of the deliberate indifference standard commonly reserved for merits inquiries." *Id. citing Camilo-Robles, 151 F.3d at 8.*

> Proof of deliberate indifference requires that [plaintiff] show "(1) a grave risk of harm, (2) the defendant's actual or constructive knowledge of that risk, and (3) his failure to take easily available measures to address the risk." But officers remain protected by qualified immunity when they make reasonable mistakes regarding the constitutionality of their conduct. Therefore, qualified immunity provides "protection to all but the plainly incompetent or those who knowingly violate the law."

*Young, 396 F. Supp. 2d at 136-137 (citations omitted).*

## IV. PROBABLE LENGTH OF TRIAL

Defendants estimate that the entire trial will take four to five days.

## V. ADDITIONAL MATTERS

The admissibility of plaintiff's nolo plea in District Court along with his inflammatory and threatening letters to the police department will be one matter that the Court will be asked to address at the time of trial.

## VI. PROPOSED JURY INSTRUCTIONS

In addition to the Court's normal jury instructions in civil cases, defendants propose the following jury instructions.

### *A. Federal § 1983 Claims*

#### 1. Excessive Force

Plaintiff alleges that the officers violated his Fourth Amendment right to be free from the use of excessive force during that arrest. "All persons present in the United States have the legal right, as guaranteed in the Fourth Amendment to the United States Constitution, to be free from unreasonable seizures, which includes the right to be free from unreasonable use of force during an arrest."

In order to find for the plaintiff on his claim of excessive force, you must find: (1) a significant injury occurred; (2) the injury resulted directly and only from the use of force that was clearly excessive to the need, and (3) the excessiveness of the force is objectively unreasonable. *Reese v. Anderson, 920 F.2d 494 (5th Cir. 1991).*

However, I instruct you that "[a] police officer may use that amount of force which is reasonable to make an arrest, or to defend himself or another from bodily harm." *Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 205 (1st Cir. 1990).*

> "If you find that a defendant used force in this case, you should then consider whether the force used by that defendant was reasonable. Whether or not the force is an issue to be determined by you in light of all the surrounding circumstance, on the basis of that degree of force a reasonable officer would have applied in effecting the arrest under the circumstances disclosed in this case." *Id. at 205.*

Therefore, the "reasonableness" inquiry in an excessive force case is an objective one: "the question is whether the actions of the police officer were 'objectively reasonable' in light of

the facts and circumstances confronting him, without regard to his underlying intent or motivation." *Gaudreault, 923 F.2d at 205 (1st Cir. 1990).*

"The 'reasonableness' of the use of force must be judge from the perspective of a reasonable officer under the same circumstances, rather than with the perspective of perfect hindsight. In doing so, you may consider the fact that [police] officers are often forced to make judgments, in circumstances that are tense, uncertain, and rapidly evolving, about the amount of force that is necessary in a particular situation." *Sokolow, 490 U.S. at 7.*

I caution you that "not every push or shove rises to the level of a constitutional violation, and that police officers making arrests are often forced to make split-second decisions about the amount of force needed to effect an arrest while operating under tense, dangerous and rapidly-changing circumstances." *Gaudreault, 923 F.2d at 205 (1st Cir. 1990).*

I further instruct you that under state law, it is unlawful for any person to use force or any weapon in resisting a legal or an illegal arrest by a police officer if the person has reasonable grounds to believe that he/she is being arrested and that the arrest is being made by a police officer. *R.I.G.L. § 12-7-10*.

2. First Amendment – Freedom of Speech

In Count II and III, plaintiff claims that the defendants' actions also amounted to a violation of his First Amendment right to free speech.

I instruct you that the First Amendment declares in part that "Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people peaceably to assemble." U.S. Const. amend. I.

However, even though both the Rhode Island and the United States Constitutions protect the rights of individuals to disseminate their views on various matters, a party does not have an

absolute right to express his or her views wherever and whenever they want or "to use any form of address in any circumstances that he chooses." *Cohen v. California, 403 U.S. 15, 19 (U.S. 1971). . Barrington v. Blake, 568 A.2d 1015, 1018 (R.I. 1990) quoting Cornelius v. NAACP Legal Defense and Educational Fund, Inc., 473 U.S. 788, 799 (1985).*

Rather, expressive activity may be subject to reasonable time, place, and manner restrictions. *Id. Heffron v. International Society for Krishna Consciousness, 452 U.S. 640, 647 (1981).*

Restrictions on such exercises of free speech are valid "provided that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Vacca v. Barletta, 933 F.2d 31, 33-34 (1st Cir. 1991). See also Blake, 568 A.2d at 1019.*

In addition, I instruct you that "the First Amendment does not insulate individuals from criminal sanction merely because they are simultaneously engaged in expressive activity." *Papineau v. Parmley, 465 F.3d 46 (2d Cir. 2006) citing Cox v. Louisiana, 379 U.S. 536, 554 (1965).*

In the instant case, I instruct you that the police officers were faced with competing First Amendment rights in the form of those possessed by the participants and spectators of the parade, *Hurley v. Irish-American Gay, Lesbian & Bisexual Group, 515 U.S. 557, 569 (U.S. 1995) ("It is equally well-recognized that the word "parade" to indicate marchers who are making some sort of collective point, not just to each other but to bystanders along the way"),* and those claimed by plaintiff.

3. *§ 1983* Claim v. City for Failure to Train and Supervise

Plaintiff has brought a direct cause of action against the City of Newport for its alleged failure to properly train and supervise allegedly in violation of plaintiff's constitutional rights. In order to maintain a claim against a municipality based upon the municipality's alleged failure to train, the plaintiff cannot rely upon the fact that his constitutional rights have been violated by a state actor.

Rather, a plaintiff must establish that "1) there is a *constitutional violation* by a municipal employee and 2) the violation can be said to been *caused* by a lack of proper training." *Britton, 901 F.Supp. at 450 (emphasis added) citing Collins v. City of Harker Heights, 503 U.S. 115, 122-25 (1992).*

Thus, "in order to have a viable *§ 1983* claim against a municipality, a state actor must first commit an underlying *constitutional violation*." *Pittsley v. Warish, 927 F.2d 3, 9 n.4 (1st Cir. 1991) (emphasis added).* Accordingly, if you first find that plaintiff did not suffer a constitutional injury at the hands of the individual defendants, you must return a verdict in favor of the City on Count IV.

If a plaintiff succeeds in demonstrating the infliction of a constitutional injury by a state actor, the plaintiff must then also demonstrate: 1) that the municipality's failure to train or supervise that individual amounted to a "deliberate indifference" to the rights of persons with whom the police come into contact; 2) that the failure to train or supervise represents a "policy" for which the city is responsible; and 3) the policy actually *causes* the injury. *City of Canton, Ohio v. Harris, 489 U.S. 378, 389-90 (1989).*

In addition, you must further find that the failure to train and supervise amounted to "deliberate indifference". *See Flowers v. Fiore, 239 F.Supp.2d 173, 179 (D.R.I. 2003) quoting Guadreault v. Municipality of Salem, Mass., 923 F.2d 203, 209 (1st Cir. 1990) ("summary*

*judgment is manifestly appropriate where plaintiff fails to offer even a scintilla of evidence that the municipality failed to train its officers and that the failure to do so constituted deliberate indifference.")*

4. Supervisory Liability against Chief Golden

Plaintiff specifically seeks to maintain a claim pursuant to *§ 1983* for supervisory liability against Chief Charles Golden. I instruct you in the first instance that similar to municipal liability, supervisory liability under *§ 1983* may not be predicated on an unconstitutional act of a subordinate. Rather, you must find that it was the supervisor's own acts or omissions that led to deprivation of plaintiff's constitutional rights. *Aponte Matos v. Toldeo Davilla 135 F.3d 182, 192 (1st Cir. 1998).*

In order for you to find liability against Chief Golden in his supervisory role you must find:

"(1) there is subordinate liability, and (2) the supervisor's action or inaction was 'affirmatively linked' to the constitutional violation caused by the subordinate." *Id*. "That affirmative link must amount to supervisory encouragement, condonation, or acquiescence, or gross negligence amounting to deliberate indifference." *Id.*

That is, a supervisor must be "either a primary actor involved in, or a prime mover behind, the underlying violation." *Camilo-Robles v. Zapata, 175 F.3d 41, 43-44 (1999).* "[T]he supervisor's conduct must have "led inexorably to the constitutional violation." *Doe v. Dubeck, 2006 U.S. Dist. LEXIS 40429, 14-15 (D. Mass. 2006).*

5. Civil Rights Conspiracy

Plaintiff has also ask you to find that the individual defendants conspired together to violate plaintiff's civil rights. A civil rights conspiracy is defined as "a combination of two or

more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another and an overt act that results in damages." Earle v. Benoit, *850 F.2d 836, 844 (1st Cir. 1988) (internal quotations omitted).*

For the conspiracy to be actionable under *§ 1983*, Plaintiff must prove that "there [has] been, besides the agreement, an actual deprivation of a right secured by the Constitution and laws." Id. *See also,* Torres v. Superintendent of Police of Puerto Rico, *893 F.2d 404, 411 (1st Cir. 1989)*

Proof of the conspiracy must be proved without speculation and conjecture. Id. Conspiracy allegations that are purely conclusory are not adequate to state a claim. Pigott v. Lynn Police Dept., *7 F.3d 218 (1st Cir. 1993).*

Plaintiff has the burden of identifying the specific constitutional right that he claims was violated by the Defendants. Nieves v. McSweeney, *241 F.3d 46, 53 (1st Cir. 2001).*

*B. State Law Claims*

1. Assault and Battery

To render a defendant liable in an assault action, the plaintiff must prove that he was placed in apprehension of imminent harmful or offensive contact. *Restatement (Second) of Torts, § 24.*

There is a subjective standard governing actions for assault that requires a plaintiff to be aware of imminent contact and suffer apprehension at the possibility of such contact. *Restatement (Second) of Torts, § 27.*

In order to prove a cause of action for battery plaintiff must establish that the defendant intended to commit a harmful or offensive touching or to create apprehension of the same, and in fact caused such a harmful or offensive touching. *Restatement (Second) of Torts, § 18.*

2. False Arrest and False Imprisonment

In the instant case, plaintiff also alleges that she was falsely arrested. "Under the Fourth Amendment, the right to be free from unreasonable seizures of the person gives rise to a requirement that arrests be supported by probable cause." *Rivera v. Murphy, 979 F.2d 259, 263 (1st Cir. 1992)*.

A police officer should not be found liable under § 1983 for a warrantless arrest or search because the presence of probable cause was merely questionable at the time. *Floyd, 765 F.2d at 5*.

In order to find against these defendants, you must find that it was clear that there was no probable cause at the time the arrest or search was made. *Floyd, 765 F.2d at 5*.

"Probable cause exists when facts and circumstances within the arresting officers' knowledge and of which he has reasonably trustworthy information are sufficient to warrant a man of reasonable caution and prudence in the belief that the defendant is committing or has committed a crime." *Floyd, 765 F.2d at 5.*

This is judged by an objective test. The question is whether another officer standing in the shoes of these defendants and having the same information these defendants had, would reasonably have come to the conclusion that there was probable cause to arrest. *Floyd, 765 F.2d*

*at 5*. This determination must be made by viewing the totality of the circumstances. *Rivera v. Murphy, 979 F.2d 259, 263 (1st Cir. 1992).*

The constitution, however, does not guarantee that only the guilty will be arrested. A police officer who arrests someone for probable cause is not liable for false arrest simply because the innocence of the suspect is later proved. A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause and being mulcted in damages if he does. *Pearson v. Ray, 386 U.S. 557 (1967).* Therefore, I caution you that the ultimate "[g]uilt or innocence of the underlying charge is not relevant to the determination of whether the arresting officer committed a false imprisonment." *Dyson v. City of Pawtucket, 670 A.2d 233, 239 (R.I. 1996).*

Moreover, police officers are not obligated to investigate every claim of innocence prior to charging a suspect with a crime. "[O]nce police officers have discovered sufficient facts to establish probable cause, they have no constitutional obligation to conduct any further investigation in the hopes of uncovering potentially exculpatory evidence." *Schertz v. Waupaca County, 875 F.2d 578, 583 (7th Cir. 1989).*

3. Malicious Prosecution

One of the claims of the plaintiff is for malicious prosecution. I instruct you that in order for the plaintiff to prevail, she must prove the following elements:

a. Defendants initiated a criminal proceeding;
b. With malice;
c. Without probable cause; and
d. Which terminated in plaintiff's favor.

*Senra v. Cunningham, 9 F.3d 168, 174 (1st Cir. 1993); Solitro v. Moffat, 523 A.2d 858, 861-62 (R.I. 1987); Nagey v. McBurney, 392 A.2d 365, 367 (1978).*

Malice may be established by showing that the person initiating the original action was actuated by a primary motive of ill will or hostility or did not believe that he would succeed in that action. *Nagey, 392 A.2d at 367.*

The plaintiff must establish the elements of malice and lack of probable cause by "clear proof." *Solitro v. Moffat, 523 A.2d 858, 861-62 (R.I. 1987).*

Clear proof is a higher burden of proof than the preponderance of the evidence. This is a stricter burden. *See Powers v. Carvalo, 368 A.2d 1242, 1247 (R.I. 1977).*

4. Intentional Infliction of Emotional Distress

under Rhode Island law, in order to maintain an action for intentional infliction of emotional harm:

> (1) the conduct must be intentional or in reckless disregard of the probability of causing emotional distress, (2) the conduct must be extreme and outrageous, (3) there must be a causal connection between the wrongful conduct and the emotional distress, and (4) the emotional distress in question must be severe. *Champlin, 478 A.2d at 989.*

In order to find defendant liable for intentional infliction of emotional distress it is not enough for you to conclude that the defendant has acted with an intent which is tortious or even criminal, that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice or a degree of aggravation which would entitle the plaintiff for punitive damages for another tort. *See Restatement (Second) of Torts (1965), § 46, comment (d).*

Rather, in order to meet the "extreme and outrageous" standard, a plaintiff must demonstrate that the defendants' conduct:

> Has been so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arose his resentment against the actor, and lead him to exclaim 'outrageous'. *Restatement (Second) of Torts (1965), § 46, comment (d).*

I also instruct you that the plaintiff must also have suffered physical ills as a direct result of defendants' conduct. *Curtis, 522 A.2d at 208*.

5. Qualified Immunity

I instruct you that police officers are entitled to immunity, which means that you cannot find them liable if they mistakenly conclude that probable cause exists and that mistake is in good faith. *Floyd, 765 F.2d at 5*; *Hunter v. Bryant, 112 S.Ct. 534, 537 (1991)*.

This immunity attaches even if you find that there was no probable cause to arrest plaintiff. This is because there is a lesser standard than showing probable cause to arrest in order for the defendants to enjoy the protection of qualified immunity. They need only show objectively reasonable grounds for believing that probable cause existed to arrest. *Ricci v. Urso, 974 F.2d 5,7 (1st Cir. 1992)*.

A police officer should not be found liable under *§ 1983* for a warrantless arrest or search because the presence of probable cause was merely questionable at the time. *Floyd, 765 F.2d at 5 (1st Cir. 1985)*.

Rather, police officers who mistakenly conclude that probable cause exists are entitled to immunity. *Hunter, 112 S.Ct. at 537 (1991)*.

If you find that defendants acted in good faith then as a matter of law they are immune from liability. *Malachowski v. City of Keene, 787 F.2d 704, 713 (1st Cir. 1986)*.

*C. Damages*

Do not speculate as to damages. You must base any award on the evidence and it must be fair and adequate.

Plaintiff cannot seek to have damages awarded on the basis of the importance of the rights violated. The plaintiff must prove actual damages. *Memphis Community School District v. Statura, 106 S.Ct. 2537 (1987).*

You are not to consider and may not award damages simply for the violation of a constitutional right. *Memphis Community School District vs. Statura, 477 U.S. 299 (1986)*; *Tedesco v. City of Stamford, 588 A.2d 656, 658 (Conn. App. 1991).*

Damages have limitations and by that I mean that you can only award damages to the extent that you find that the damages have been proven, so that is the first thing you have to decide. Then in doing that, you can not speculate, you can not guess, you have to try to decide not only the fact that it happened, but you have to decide it has been proven with certainty in accordance with the rules I have given you and as to the amount. If you are going to award any amount, they too have to be proven and you can not speculate as to what those damages are. *Davet v. Maccarone, 973 F.3d 22 (1st Cir. 1992).*

You have to base the amount, if you so award an amount, upon consideration of the evidence before you and then with that before you try to determine and as precise a fashion as you can what you think is a fair and adequate compensation for what the plaintiff alleges he suffered. So first, we ask, did he suffer damages? Were they proximately caused by the wrongful actions of the defendants? If you answered both yes, say well what damages did he suffer, you decide that and ask what is that worth? You try to determine as precise an amount as you can. *Davet v. Maccarone, 973 F.3d 22 (1st Cir. 1992).*

Any award of damages must rest on legally competent evidence establishing both the nature and extent. Damages must be rejected if based on speculation or conjecture. *Herio v. Biltmore, 119 RI 307 (1977).*

Plaintiff has also asked you the jury to impose punitive damages against these individual defendants. Punitive damages punish tortfeasors that commit intentional and malicious wrongful conduct and deter that conduct in the future. It is within you discretion as the trier of fact to decide whether to impose punitive damages and in what amount. *Soares v. Ann & Hope of Rhode Island, 637 A.2d 339 (R.I. 1993).*

However, I caution you that the standard for awarding punitive damages is high. In order to award punitive damages, plaintiffs must prove by a preponderance of the evidence that the defendants "acted with reckless or callous indifference to the plaintiff's constitutional rights or with evil motive or intent". *Fishman v. Clancy, 763 F.2d 485, 489 (1st Cir. 1985).*

The standard under R.I. law is rigorous. The plaintiff must produce evidence of such willfulness, recklessness or wickedness on the part of the defendants as amount to criminality. *Moran v. Aetna Casualty & Surety Co., 478 A.2d 964, 967 (R.I. 1984).*

Defendants,
By their attorney,

*/s/ Marc DeSisto*

Marc DeSisto, Esq. (#2757)
DESISTO LAW
211 Angell Street
P.O. Box 2563
Providence, RI 02906-2563
Phone: (401) 272-4442
Fax: (401) 272-9937
Email: marc@desistolaw.com

CERTIFICATION OF SERVICE

I hereby certify that this document has been filed electronically on November 13, 2006, and is available for viewing and downloading from the ECF system.

*/s/ Marc DeSisto*

Marc DeSisto