**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **FREDERICK BAILLARGERON** *Plaintiff* | : | |
| **V.** | : | **CA No. 06-172ML** |
| **CITY OF NEWPORT, BY AND THROUGH ITS FINANCE DIRECTOR, LAURA SITRIN; NEWPORT POLICE DEPARTMENT; CHIEF CHARLES GOLDEN; ROBERT SPELLMAN; PATRICK SHEA; AND JOSE COSTA** *Defendants* | : | |

**PRETRIAL MEMORANDUM**

**MEMORANDUM OF LAW WITH SUPPORTING CITATIONS**

**THE DEFENDANTS ROBERT SPELLMAN, PATRICK SHEA AND JOSE COSTA ACTED UNDER COLOR OF LAW WHEN THEY VIOLATED MR. BAILLARGERON'S CIVIL RIGHTS**

In order to be found liable on a § 1983 claims, one need only prove two elements required by statute. The elements to be proved are (1) the complaint of conduct was committed under the color of law, and (2) the conduct denied the Plaintiff his rights secured by the Constitution of the laws of the United States. Martinez v. Colone, 54 F.3d 980 (1st Cir. 1995).

***UNDER COLOR OF LAW***

It is well-established that the question of whether a police officer is on-duty or off-duty is irrelevant when determining whether or not a police officer is acting under the color of law. Rather, the focus is more on an officer's actions. Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir. 1989) (courts look to the nature of the

officer's act, ***not simply his duty status***) (emphasis added); Rivera v. LaPorte, 896 F.2d 691, 695-96 (2nd Cir. 1990) (more is required than a simple determination as to whether an officer was on-duty or off-duty when the challenged incident occurred). By way of example, the court in United States v. Tarpley, 945 F. 2d 806, 809 (5th Cir. 1991), held liability may be found where a police officer, albeit off duty, nonetheless invokes the real or apparent power of the police department. Liability may also exist where off-duty police officers perform duties prescribed generally for police. See Stengal v. Belcher, 522 F.2d 438, 441 (6th Cir. 1975).

The question of whether a police officer is acting under the color of laws turns on the nature and circumstances of the officer's conduct and the relationship of that conduct to the performance of his official duties. Id. at 986. "***The key determinant is whether the actor, at the time in question, purposes to act in an official capacity or to exercise official responsibilities pursuant to state law***." Id. (emphasis added). The First Circuit, two years after Martinez, further expanded the analysis of this crucial issue to include a consideration of "whether the police officer was engaged in purely personal pursuits." Parilla-Burgos v. Hernandez-Rivera, 108 F.3d 445, 449 (1st Cir. 1997). The Court also set out a "totality of the surrounding circumstances" test, suggesting that factors are to be viewed independently, where no one factor is completely determinative when deciding whether an officer is acting under the color of law. Id., at 449, quoting Martinez, 54 F.3d at 988.

There can be no doubt that defendants Spellman, Costa and Shea acted under color of law. Officer Spellman was in uniform and arrested Mr. Baillargeron. Defendant Costa was the "officer in charge" as previously testified to by Officer Spellman.

Although Detective Shea claims to have been "off duty" at the time, evidence abounds that he too acted under color of law.

According to Spellman, defendant Shea was in radio contact with him. He allegedly alerted Spellman regarding Mr. Baillargeron's so called activities." Moreover, he testified that he "made the decision" to take Mr. Baillargeron down to the ground at the time of the arrest. He also prepared a detailed police report regarding this incident. Additional evidence of objective indicia of color of law authority with respect to Officer Shea is the fact that he summoned other officers to the scene. In United States v. Tarpley, 945 F.2d 806, 809 (5th Cir. 1991), it was noted that "the fact that the off-duty police officer summoned another officer to [the scene] where [that] officer was assaulting plaintiff was of particular significance in concluding that [the] officer was acting under the color of law." 945 F.2d 806, 809 (5th Cir. 1991).

***Mr. Baillargeron's Civil Rights Were Denied By The Conduct Of The Defendants***

This case is about the First Amendment and a group of police officers who did not like the content of the protected speech. The First Amendment provides in full:

> Congress shall make no law respecting an establishment of, or prohibiting the free exercise thereof; or abridging the freedom of speech, or the press; or the rights of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. Amend. 1.

In this case, the defendant City of Newport charged Mr. Baillargeron with disorderly conduct for allegedly "obstructing a sidewalk" on Broadway. Some six days before the jury trial began in the criminal prosecution of Mr. Baillargeron the charges were increased to include an additional count under Rhode Island's disorderly conduct

statute, which prohibits conduct which obstructs or interferes physically with a lawful meeting, procession or gathering.

"Sidewalks of course, are among those areas of public property that traditionally have been held open to the public for expressive activities and are clearly within those areas of public property that may be considered, generally without further inquiry, to be public forum property." United States *et al* v. Grace *et al*, 461 U.S. 171, 179; 103 S.Ct. 1702 (1983). "When a citizen is in a place where [he] has every right to be, he cannot be denied the opportunity to express his views simply because the Government has not chosen to designate the area as a forum for public discussion." Id. at 184, Marshall, J., Dissenting (internal citations omitted). "[O]ne who is rightfully on a street which the state has left open to the public carries with him there as ***elsewhere*** the constitutional right to express his views in an orderly fashion." Id., quoting Janison v. Texas, 318 U.S. 413, 416 (1943) (emphasis in original).

Mr. Baillargeon was rightfully in a public forum expressing his views about the Newport and Middletown Police Departments. He was not disorderly in any way. The fact of the matter is that the defendant would not stand for his message. He was told by defendants Jose Costa and Spellman that he would have to move to a grassy area, near City Hall, with his sign, a place where he could not be seen. He was later told again by Officer Spellman that he would need to move away from the sidewalk which abutted the Paramount Building on Broadway, just before he was assaulted and arrested. Mr. Baillargeron was not required to suspend his Constitutional Rights to avoid embarrassment for these defendants. They clearly, while acting under color of law, with

force and impunity thus far, denied Mr. Baillargeron these rights guaranteed by the First Amendment.

**THE SEIZURE OF MR. BAILLARGERON'S PERSON VIOLATED THE FIRST, FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**

A seizure occurs under the Fourth Amendment "when the officer, by means of physical force or show of authority, has in some was restrained the liberty of a citizen." Nieves v. McSweeney, 241 F.3d 46, 55 (1st Cir. 2001) quoting Terry v. Ohio, 392 U.S. 1 19n. 20 L.Ed 1, 105 S.Ct. 1694 (1968). Mr. Baillargeron was seized for Fourth Amendment purposes when defendant Spellman placed his arms around him and pushed him some twenty to thirty feet until finally slamming him up against the exterior wall of a building on Broadway. Defendant Shea seized Mr. Baillargeron as he pressed his elbow into the back of Mr. Baillargeron's neck bringing him to the ground. Finally, Defendant Jose Costa seized Mr. Baillargeron by intentionally and maliciously squeezing the handcuffs tightly around Mr. Baillargeron's wrists once they had already been applied by Officer Spellman, and by purposefully bending his thumb backwards.

**MR. BAILLARGERON'S CLAIMS OF EXCESSIVE FORCE IN VIOLATION OF HIS CIVIL RIGHTS**

As a result of defendant Jose Costa applying extreme pressure to Mr. Baillargeron's handcuffs, he suffered serious injuries. The handcuffs were applied so tightly that he had contusions and lacerations around his wrist. He was treated at the hospital for his injuries. Additionally, defendant Costa purposefully bent his right thumb backwards causing extreme pain. It is Mr. Baillargeron's contention that all of this was done with grave intention and malice.

A videotape of the booking of Mr. Baillargeron shows the great difficulty that the officer had removing the handcuffs. It takes the officer approximately one (1) minute and thirteen (13) seconds to remove the handcuffs from Mr. Baillargeron because they were "double locked".

Mr. Baillargeron was left at the police station for one hour with the handcuffs applied in this manner.

Although Mr. Baillargeron did not suffer any permanent injury due to the conduct of these defendant's, his claims are nonetheless cognizable under Section 1983.

As the first Circuit has stated: "Although the severity of the injury also may be considered, see, e.g. Dean v. City of Worcester, 924 F.2d 364, 369 (1st Cir. 1991), we have stated explicitly that a 'serious injury' is not a prerequisite to recovery." Bastien v. Goddard, 279 F. 3d 10, 14 (1st Cir. 2002). The Court went on to cite numerous cases which support that proposition, e.g.

> Krostrezua v. City of Troy, 247 F.3d, 633, 639 (6th Cir. 2001) (excessive force claims can be maintained regardless of whether injuries left physical marks or caused exclusive physical damage; including as in that case, when individuals wrists are cuffed too tightly); Glenn v. City of Tyler, 242 F.3d 307, 314 (5th Cir. 2001); n 7 Headwaters Forest Defense v. County of Humboldt, 240 F.3d 1185, 1199 (9th Cir.), vacated and remanded on other grounds by 151 L.Ed. 2d 1, 122 S.Ct. 24 (2001) ('whether the use of force poses a risk of permanent significant injury is a factor to be considered in evaluating the need for the force used in a particular case – but it is certainly not dispositive'), Lambert v. City of Dumas, 187 F.3d 931, 936 (8th Cir. 1999) (circuit has rejected the 'significant injury' requirement for excessive force claims, requiring instead 'actual injury') . . .

Id.

Indeed, in Bastiere, *supra*, the Plaintiff's injuries were as a result of handcuffs being applied too tightly. With Mr. Baillargeron, not only were the handcuffs applied so

tightly as to cause actual injury, his thumb was bent backwards by defendant Costa, causing him temporary nerve damage.

Although there is clearly no "significant injury" requirement in the First Circuit, it can certainly be argued that Mr. Baillargeron's injuries were in fact significant.

**MALICIOUS PROSECUTION OF MR. BAILLARGERON**

To be successful in a claim for Malicious Prosecution under Rhode Island Law, Mr. Baillaregon need show that the Defendants (1) initiated a prior criminal proceeding against him; (2) that there was no probable cause to initiate the proceeding; (3) the proceeding was "instituted maliciously" and (4) the proceeding terminated in his favor. Rezendes v. Beaudette, 797 A.2d 474 (R.I. 2002), citing Beaudoin v. Levesque, 697 A.2d 474 (R.I. 1997). "Probable cause exists when facts and circumstances would lead an ordinarily prudent and careful person to conclude that the accused is guilty." Id.

It is undisputed that the defendants initiated a prior criminal proceeding against him. Mr. Baillargeron was charged with the typical triumvirate of charges in this case, which are simple assault, resisting arrest, and disorderly conduct. Moreover, in an apparent attempt to secure a conviction against Mr. Baillargeron, an alternative theory of disorderly conduct was added to the charges some six (6) days before the jury trial was to begin. This added count, in addition to the one which claimed that Mr. Baillargeron had "obstructed a sidewalk," now claimed that Mr. Baillargeron had interfered with a lawful "meeting, procession or gathering."

Carrying a sign on a sidewalk that criticizes the very police department which ultimately arrested and prosecuted Mr. Baillargeron, does not provide probable cause to initiate criminal proceedings. Malice, under the facts of this case, is the only logical

conclusion for initiating the charges against Mr. Baillargeron. Finally, a Newport County jury found Mr. Baillargeron to be not guilty of any charges initiated by these defendants.

**CONSPIRACY TO VIOLATE MR. BAILLARGERON'S CIVIL RIGHTS**

A conspiracy for Section 1983 purposes, is defined as " a combination of two or more persons acting in concert to commit an unlawful act, . . . the principal element of which is an agreement between the parties 'to inflict a wrong against or injury upon another,' and 'an overt act that results in damages'". Ousley v. Town of Lincoln, 313 F.Supp.2d 78, 85 (R.I. Dist. 2004) quoting Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988) (internal citations omitted in original). Proof of a conspiracy "may consist of indirect evidence, including reasonable inferences drawn from attendant circumstances." United States v. Rivera-Ruiz, 244 F.3d 263, 268 (1st Cir. 2001), quoting United States v. Glover, 814 F.2d. 15, 16 (1st Cir. 1987) ("The Agreement itself need not be express, but may consist of no more than ***a tacit understanding***"). Id. (emphasis added).

In this case, it becomes abundantly apparent that defendants Spellman, Shea and Costa conspired to violate Mr. Baillargeron's civil rights and to have him charged criminally.

Evidence at trial will show that the defendants were in communication with each other at the parade regarding Mr. Baillargeron. Evidence will also show that the police report authored by defendant Shea, was purposefully untruthful and inaccurate. The inevitable inference is that he attempted to support the report drafted earlier by defendant Spellman. For example, at trial in the Superior Court, in an apparent effort to explain away his nonsensical report, defendant Shea stated that it was "not [his] best report,"; that when he wrote in his report that he heard people telling Mr. Baillargeron to lower his

sign because he was blocking their view while some thirty (30) yards away as the parade passed, that he was really just expressing his opinion. Additionally, he explained that he didn't really see an old lady tap Mr. Baillargeron on his shoulder and that was just another mistake in his report. Additionally, confronted with the fact that there was a fence making it impossible for Mr. Baillargeron to being jumping in and out of the street with his sign, not to mention the video tape evidence, defendant Shea suggested that it must have been a miscommunication or misunderstanding, despite the fact that he put the same in his report.

The foregoing examples only scratch the surface of the conspiracy. The evidence exposes far more than a tacit understanding, it shows a blatant conspiracy to get Mr. Baillargeron because they did not like what his sign said.

**CONSPIRACY TO DEPRIVE MR. BAILLARGERON TO BE FREE FROM UNREASONABLE SEIZURE UNDER THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION**

To show a Fourth Amendment violation "through the initiation and pursuit of criminal charges, the prosecution of those charges must at a bare minimum have occasioned a deprivation of liberty consistent with the concept of seizure." Britton v. Maloney, 196 F.3d 24, 28 (1st Cir. 1999). State actors, such as the co-defendant police officers named in Mr. Baillargeron's complaint "are liable for federal constitutional deprivations when they 'conspire to procure groundless state indictments and charges based upon fabricated evidence or false, distorted, perjurious testimony presented to official bodies in order to maliciously bring about a citizen's trial or conviction." Robinson v. Maruffi, 895 F.2d 649, 655 (10th Cir. 1999), quoting Jones v. City of Chicago, 856 F. 2d 958, 993 (7th Cir. 1998). "Generally, the offending legal process

comes either in the form of an arrest warrant (in which case the arrest would constitute the seizure) or a subsequent charging document (in which case the sum of post-arraignment deprivation would compromise the seizure). Nieves, at 54, citing Singer v. Fulton County Sheriff, 63 F.3d 110, 117 (2nd Cir. 1995).

Here, defendants Spellman, Shea and Costa agreed and acted intentionally to have Mr. Baillargeron falsely arrested and prosecuted. Further, these defendants agreed and acted intentionally, to fabricate and contrive the charges lodged against Mr. Baillargeron, to submit and file false police reports, and to give statements and testimony to suggest and corroborate the fabricated charges lodged against Mr. Baillargeron.

**ASSAULT AND BATTERY**

"Assault and battery are separate acts, usually arising from the same transaction, each having independent significance." Victorie Picard v. Barry Pontiac – Buick, Inc. *et al*, 654 A.2d 690, 694 (RI 1995), citing Proffitt v. ricci, 463 A.2d 514, 517 (RI 1982). "An assault is a physical act of a threatening nature or an offer of corporal injury which puts an individual in a reasonable fear of imminent bodily harm." Id.

By contrast, battery has been defined "as an act that was intended to cause, and in fact did cause 'an offensive contact with or inconsistent touching of or trauma upon the body of another, thereby generally resulting in the consummation of the assault. An intent to injure Plaintiff, however, is unnecessary in a situation in which a defendant willfully sets in motion a force that in its ordinary course causes the injury.'" Id., quoting Proffitt, at 517.

**Defendant Robert Spellman**

Defendant Spellman placed his hands upon the body of Mr. Baillargeron and ultimately placed him in a bear hug, pushing him some twenty to thirty feet through a crowd, ultimately slamming him up against the wall of a building. His actions were intentional, outrageous, injurious, offensive, humiliating, and certainly caused Mr. Baillargeron trauma.

**Defendant Patrick Shea**

As Mr. Baillargeron lay face down on a concrete surface, defendant Patrick Shea pressed his knee into Mr. Baillargeron's back, had his elbow pressed into the back of his neck, and bent his thumb backward. His actions were intentional, outrageous, unwarranted, offensive, meant to inflict pain and injuries, and certainly did in fact cause Mr. Baillargeron trauma.

**Defendant Jose Costa**

Once Mr. Baillargeron had been arrested and was being lead through an alley near the Paramount building by the defendants, defendant Costa bent Mr. Baillargeron's left hand backwards, while he was handcuffed, and also bent Mr. Baillargeron's right thumb backwards as he screamed in pain. He further closed the handcuffs around Mr. Baillargeron's wrists so tightly that it took another officer over one (1) minute to remove the same at the police station.

All of defendant Costa's actions were deliberate, offensive, intentional, outrageous and meant to inflict pain and injuries upon the body of Mr. Baillargeron. As a result, defendant Costa did in fact cause Mr. Baillargeron trauma.

**FALSE IMPRISONMENT AND ARREST**

In order to sustain an action for False imprisonment, the following elements must be proved "(1) that the defendant[s] intended to confine him (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Dyson v. City of Pawtucket, 670 A.2d 233, 239 (RI 1996).

Here, defendant's Spellman Shea and Costa, intended to have Mr. Baillargeron arrested and imprisoned. He was certainly aware of his confinement and did not consent to the same. The arrest and imprisonment was not privileged or effectuated with any legal justification.

## PROPOSED JURY INSTRUCTIONS

### I. Nature of the Claim

I will give you a brief summary of the case before instructing you further on the law you are to apply during your deliberations. The Plaintiff, Frederick Baillargeron, alleges on or about May 2, 2004, in Newport, he was falsely arrested by the Defendants Newport Police Depart, Patrick Shea, Robert Spellman, and Jose Costa and as a result he suffered various injuries.

The city of Newport is an additional Defendant in this case. I will now give you the law as it applies to the different counts in this case. I will now instruct you with respect to the civil rights counts of this complaint.

### II. The Statute

The law to be applied to the civil rights count is the Federal civil Rights Law which provides a remedy for individuals who have been deprived of their constitutional rights under color of state law. Section 1983 of title 42 of the United States Code States:

Every person who, under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**III. Elements of a Section 1983 Claim**

To establish a claim under section 1983, a Plaintiff must establish by a preponderance of the evidence, each of the following three elements:

First, that the conduct complained of was committed by a person acting under the color of state law;

Second, that this conduct deprived the Plaintiff of rights, privileges or immunities secured by the constitution or laws of the United States; and

Third, that the Defendants acts were the proximate cause of the injuries and consequent damages sustained by the Plaintiff.

I shall now examine each of the three elements in greater detail.

**IV. First Element – Action Under Color of State Law**

Definition

The first element of the Plaintiffs claim is that the Defendants Newport Police Department, Robert Spellman, Patrick Shea, and Jose Costa acted under color of state law. The phrase "under color of state law" is a shorthand reference to the words of section 1983, which includes within its scope action taken under color of any statute, ordinance, regulation, custom or usage, of any state. The term "State" encompasses any

political subdivision of a state, such as a county or city, and also any state agencies or a county or city agency, including police departments.

Action under color of state law means action that is made possible only because the actor is clothed with the authority of the state. Section 1983 forbids action taken under color of state law where the actor misuses power that he possesses by virtue of state law.

An actor may misuses power that he possesses by virtue of state law even if his acts violate state laws; what is important is that the Defendant was clothed with the authority of state law, and that the Defendant's actions were made possible by virtue of state law.

**V. City Official Acting Under Color of State Law- As a Matter of Law**

Whether the individual Defendants, Newport Police Department, Robert Spellman, Patrick Shea and Jose Costa committed the acts alleged by the Plaintiff is a question of fact for you, the jury, to decide. I will instruct you in a moment on how you will decide that issue. For now, assuming that the defendants did commit those acts, I instruct you that, since these Defendants were officials of the City of Newport at the time of the acts in question, they were acting under color of state law. In other words, the first statutory requirements are satisfied as to the claims against the individual defendants.

**VI. Deprivation of Right**

The second element of Plaintiff's claims is the he was deprived of a federal right by these defendants. In order for a Plaintiff to establish the second element, he must show three things by a preponderance of the evidence: First, that the Defendants

committed the acts alleged by Plaintiff; second that those acts caused the Plaintiff to suffer the loss of a federal right; and third, that, in performing the acts alleged, the defendants acted intentionally or recklessly.

**VII. Unreasonable Force and False Arrest**

The Plaintiff Frederick Baillargeron, claims that excessive force was used by the Defendants in connection with her detention. A person, even if she is being lawfully arrested, has a constitutional right to be free of excessive force. An officer is entitled to use such force as a reasonable person would think is required to take one arrested into custody, and this may include such physical force as is reasonable necessary to accomplish his lawful purpose. Thus, if you find that the Defendants used greater force than was reasonably necessary in the circumstances of this case, you must find that the defendants are liable for a violation of the Plaintiff's Civil Rights. Likewise, once a person is in custody, an officer is entitled to use such force as a reasonable person would think is required to maintain one arrested into custody.

The test is one of objective reasonableness. In using the test of objective reasonableness, you look to the facts and circumstances of this particular case, including the severity of the crime at issue, whether the suspect poses and immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

Plaintiff, Frederick Baillargeron further alleges that he was falsely arrested by the Defendants; the Plaintiff must show that he was detained without legal justification.

To show a false arrest the Plaintiff must prove four elements by a preponderance of the evidence. The Plaintiff must prove:

(1) The Defendants intended to confine the Plaintiff; (2) The Plaintiff was conscious of the confinement; (3) The Plaintiff did not consent to the confinement; and (4) the Defendant had no privilege to cause the confinement. See restatement (second) of Torts ' ' 35, 118 CMT.B. (1965). Neither actual malice nor lack of probable cause is an element of false arrest. 68 F.3d 1, Calero-Colon v. Betancourt-Lebron, 68 F.3d 1, 5, n. 6 (1st Cir. 1995).

**VIII. State of Mind – General**

I instruct you that, to establish a claim under section 1983, the Plaintiff must show that the Defendants acted intentionally or recklessly.

**IX. State of Mind – Intentional**

An act is intentional if it is done, knowingly, that is if it is done voluntarily and deliberately and not because of mistake, accident, negligence or other innocent reason. In determining whether the Defendants acted with the requisite knowledge, you should remember that while witnesses may see and hear and so be able to give direct evidence of what a person does or fails to do, there is no way of looking into a person's mind. Therefore, you have to depend on what was done and what the people involved said was in their minds and your belief or disbelief with respect to those facts.

**X. Proximate Cause - General**

The third element which the Plaintiff must prove is that a Defendant's acts were a proximate cause of the injuries sustained by the Plaintiff. Proximate Cause means that there must be a sufficient casual connection between the act or omission of a defendant and any injury or damage sustained by the Plaintiff. An act or omission is a proximate cause if it was substantial factor in bringing about or actually causing injury, that is, if the

injury or damage was a reasonably foreseeable consequence of a defendant's acts or omissions. If an injury was a direct result or a reasonable probable consequence of a defendant's acts or omissions, it was proximately caused by such act or omission. In other words, if a Defendant's acts or omissions had such and effect in producing the injury that reasonable person would regard it as being a cause of the injury, then the act or omission is a proximate cause.

In order to recover damages for any injury, the plaintiff must show by a preponderance of the evidence that such injury would not have occurred without the conduct of the defendant. If you find that the defendant has proved, by a preponderance of the evidence, that the plaintiff's complaints about an injury which would have occurred even in the absence of the defendant's conduct, you must find that the defendants did not proximately cause plaintiff's injury.

A proximate cause need not always be the nearest cause either in time or in space. In addition, there may be more than one proximate cause of an injury or damage. Many factors or the conduct of two or more people may operate at the same time, either independently or together, to cause injury.

A Defendant is not liable if Plaintiff's injury was caused by a new or independent source of an injury which intervenes between the defendant's act or omission and the Plaintiff's injury and which produces a result which was not reasonably foreseeable by the defendant.

**XII. Transition Note**

I will now instruct you with respect to the malicious prosecution count of this complaint.

**XIII. Malicious Prosecution**

The Plaintiff Frederick Baillargeron has also made an allegation against the Defendants that he was subject to malicious prosecution. To recover on this claim, he must prove:

1. That the Defendants initiated a prior proceeding against him;
2. That he did not have probable cause to initiate such a proceeding;
3. That the proceeding was instituted maliciously; and
4. That it terminated in Plaintiff's favor.

Malice may be established, by a showing that the person initiating the original action was actuated by a primary motive of ill will or hostility, or did not believe that he would succeed in that action. . . proof of actual ill will, however, is not a sine qua non, for a hostile motive may also be inferred from a showing of a lack of probable cause… Nangy v. McBurney, 392 A.2d 365, 367 (1978).

**XIV. Transition Note**

I will now instruct you with respect to the claim against the city of Newport.

**XV. Respondent Superior**

Plaintiff contends that he was the victim of actions taken by the Defendant, City of Newport. A corporation, such as the city of Newport, can act only through its officers, employees and agents. Therefore, in determining the liability of the city of Newport, you must determine whether any officer, employee or agent of the city of Newport, acting on the city of Newport's behalf and within the scope of his employment, caused harm to the Defendant as set forth above. You may enter a verdict of liability against the Defendant town if you find, by a preponderance of the evidence, according to these instructions, that

an officer, agent or employee of the City of Newport took action against the Plaintiff as set forth above acting on the City of Newport's behalf and within the scope of his or her employment.

**XVI. Compensatory Damages**

Just because I am instructing you on how to award damages does not mean that I have any opinion on whether or not the Defendant should be held liable.

If you return a verdict for a Plaintiff, then you must consider the issue of actual damages.

If you return a verdict for a Plaintiff, then you must award him such sum of money as you believe will fairly and justly compensate him for any injury you believe he actually sustained as a direct consequence of the conduct of the defendants.

You shall award actual damages only for those injuries which you find that Plaintiff has proven by a preponderance of the evidence. Moreover, you shall award actual damages only for those injuries which you find Plaintiff has proven by a preponderance of evidence.

Actual damages must not be based on speculations or sympathy. They must be based on the evidence presented at trial, and only on that evidence.

These damages may include damages for pain and suffering and medical bills and expenses.

**XVII. Exemplary or Punitive Damages**

If you award the Plaintiff actual damages, then you may also make him a separate and additional award of exemplary or punitive damages. Punitive damages are awarded, in the discretion of the jury, to punish a defendant for extreme or outrageous

conduct, or to deter or prevent a defendant and others like him from committing such conduct in the future.

You may award Plaintiff punitive damages if you find that the acts or omissions of a defendants were done maliciously or wantonly. An act or failure to act is maliciously done if it is prompted by ill will or spite towards the injured person. An act or failure to act is wanton if done in a reckless or callous disregard or, or indifference to, the rights of the injured person. The Plaintiff has the burden of proving, by a preponderance of the evidence, that defendant acted maliciously or wantonly with regard to the Plaintiff's rights.

An intent to injure exists when the defendant has a conscious desire to violate federal rights of which he is aware, or when the defendant has a conscious desire to injure plaintiff in a manner he knows to be harmful. A conscious desire to perform the physical acts that caused plaintiff's injury, or to fail to undertake certain acts, does not by itself establish that defendant has a conscious desire to violate rights or injure Plaintiff unlawfully.

If you find by a preponderance of the evidence that a defendant acted with malicious intent to violate the Plaintiff's federal rights or unlawfully injure him or if you find that defendant acted with a callous or reckless disregard of the Plaintiff's rights, then you may award punitive damages. An award of punitive damages, however, is discretionary; that is, if you find that the legal requirements for punitive damages are satisfied, then you may decide to award punitive damages, or you may decide not to award them.

In making this decision, you should consider the underlying purpose of punitive damages. Punitive damages are awarded in the jury's discretion to punish a defendant for outrageous conduct or to deter him and others like him from performing similar conduct in the future. Thus, in deciding whether defendant may be adequately punished by an award of actual damages only, or whether the conduct is so extreme and outrageous that actual damages are inadequate to punish the wrongful conduct. You should also consider whether actual damages standing alone are likely to deter or prevent this defendant from again performing any wrongful acts he may have performed, or whether are necessary to provide deterrence. Finally, you should consider whether punitive damages are likely to deter or prevent other persons from performing wrongful acts similar to those defendants may have committed.

If you decide to award punitive damages, these same purposes should be considered by you in determining the appropriate sum of money to be awarded as punitive damages. That is, in fixing the sum to be awarded, you should consider the degree to which defendant should be punished for his wrongful conduct, and the degree to which an award of one sum or another will deter defendant or persons like him from committing wrongful acts in the future.

The extent to which a particular sum of money will adequately punish a defendant, and the extent to which a particular sum will adequately deter or prevent future misconduct, may depend upon the financial resources of the defendant against which damages are awarded. Therefore, if you find that punitive damages should be awarded against the defendant, you may consider the financial resources of the defendant in fixing the amount of such damages.

The law does not allow an award of punitive damages against the city itself.

**XVIII. Assault**

An assault is a physical act of a threatening nature or an offer of bodily injury that puts an individual in reasonable fear of imminent bodily harm. It is the plaintiff's apprehension of injury that renders the defendant's act compensable. Words alone are never sufficient to establish an assault. However, if words are accompanied by a physical act which increase the plaintiff's fear of imminent bodily injury that is sufficient to establish an assault.

Supportive Authority

Proffitt v. Ricci, 463 A.2d 514 (R.I. 1983); Webbier v. Thoroughbred Racing Protective Bureau, Inc., 105 R.I. 605, 254 A.2d 285 (1969).

**XIX. Battery**

A battery refers to an act that was intended to cause and in fact did cause an offensive contact with or consented touching of or trauma upon the body of another resulting in the consummation of an assault. An intent to injure a plaintiff, however, is unnecessary in a situation in which the defendant willfully sets in motion a force that in the ordinary course, causes an injury. In order to recover for a battery, a plaintiff must show that there was an offensive contact with or unconsented touching of the body of another. In order to constitute a battery, a person must intend to cause the offensive contact or unconsented touching of another person. Thus, if a person accidentally and/or inadvertently touches another individual, that would not constitute a battery.

Supportive Authority

Proffitt v. Ricci, 463 A.2d 514 (R.I. 1983).

**XX. False Imprisonment**

Elements of False Imprisonment

In this case, the plaintiff has made the claim that the defendants falsely imprisoned him. Broadly speaking, when we say that a person was falsely imprisoned we say that his or her freedom to move or choose his location is unlawfully obstructed or restrained. In order to prevail on a claim of false imprisonment, plaintiff must prove that:

a. the defendants intended to confine or detain him;

b. the plaintiff was conscious of the fact that he/was confined or detained;

c. the plaintiff did not consent to being confined or detained, and;

d. the confinement or detention was not otherwise privileged.

It is an essential element of a claim for false imprisonment that the plaintiff proves he was confined or detained without legal justification. The length of time that the plaintiff's freedom was restrained is unimportant and the defendant will be liable for false imprisonment for even a momentary confinement. Similarly, the defendant's motivation, whether good or bad, is not important.

**Supportive Authority**

Moody v. McElroy, 513 A.2d 5 (RI 1986).

**XXI. Conspiracy**

Elements of Conspiracy

In this case, the plaintiff has made a claim for conspiracy. The law defines a conspiracy as a combination of two or more persons to commit an unlawful act or perform a lawful act for an unlawful purpose.. Under the law, anyone knowing of the conspiracy, who intentionally takes part in or does any act to further the illegal agreement

becomes a participant in the conspiracy. As a participant in the conspiracy, that individual is liable for the harm that may consequently and subsequently result from the unlawful act or purpose.

In order to prevail upon this claim, the plaintiff must prove the joint assent of two or more parties in the prosecution of the unlawful enterprise to have the Plaintiff deprived of his Constitutional Right either intentionally or recklessly. In other words, the plaintiff must prove that the defendant was part of a common agreement to engage in the intentional or reckless deprivation of the Plaintiff's Constitutional Rights. In other words, the plaintiff must prove that the defendant was part of a common agreement to engage in the intentional or reckless deprivation of Plaintiff's Civil Rights. The plaintiff must prove that the defendants were aware of the conspiracy, concurred in carry out the deprivation of Plaintiff's Civil Rights and intentionally took part in or furthered that purpose. The plaintiff must also prove that he was harmed as a result of the conspirators' conduct in the prosecution of that conspiracy.

See also, § 1001.8 Special Relationships – Common Enterprise

Supportive Authority

State v. Ahmadjian, 428 A.2d 1070 (R.I. 1981); Paradis v. Zarella, (Krause, J., RI Super. 1996)

Conspiracy- Cautionary Instructions

The defendant cannot avoid liability for a far-reaching conspiracy by showing that what they conceived to be a limited conspiracy turned out to be a conspiracy of wider scope of which the smaller conspiracy was, in fact, only an element.

I must caution you, though, that disconnected circumstance any one of which or all of which are just consistent with a lawful purpose as with an unlawful undertaking, are insufficient to establish a conspiracy.

Proof beyond reasonable doubt is unnecessary in a civil suit for damages even though the conduct at issue is unlawful. It is sufficient that the evidence is full, clear and satisfactory, and the conspiracy is established by a preponderance of the evidence.

Supportive Authority

State v. Ahmadjian, 428 A.2d 1070 (R.I. 1981); Paradiz v. Zarella,, Krause, J. (R.I. Super. 1996).

**XXII. As to the Credibility of the Witnesses**

You are the judges of the facts in this case. It is your job to weigh and assess the evidence and testimony, to size up the witnesses, so to speak, to determine where the truth lies. In performing this function, you may use, but are not limited to, the following factors:

a. the witness appearance on the witness stand;

b. the manner in which testimony was given;

c. the reasonableness or unreasonableness of their testimony;

d. the means of knowledge as to any fact testified to;

e. the interest displayed in the outcome of the case;

f. the ability of the witness to recall or remember his/her prior testimony given under oath;

g. the feeling the witness may have either for or against the defendant;

h. circumstances which may shed light upon the truth or falsity of such testimony;

I. the apparent frankness and candor of the witness;

j. the presence of corroborating or contradictory evidence;

k. any inconsistencies between what was testified to in court and spoken about elsewhere.

It is your duty to evaluate the evidence and to afford the testimony of the witness such as your judgment deems is warranted, without regard to whether it came before you by direct or cross-examination. State v. Creighton, 462 A.2d 980 (RI 1983).

**XXIII. Impeachment Evidence**

A witness' testimony may be impeached or weakened by the admission of prior statements, made under oath, during a witness interview or on some prior occasion to the date the witness' testimony before you which is inconsistent or different from the witness' trial testimony. Oftentimes, these inconsistencies come out during cross-examination, when a witness' testimony at trial is compared to statements made by the witness at an earlier time and found to be different.

**XXIV. Witness Credibility**

You may also judge the credibility of a witness by:

a. any contradictions in one's testimony with themselves while testifying or with others who testified.

b. any inconsistencies in the testimony from the witness form earlier testimony given;

c. any inconsistencies in the testimony from the witness stand and that spoken about elsewhere, either to the police or someone else;

d. a witness' ability to remember those facts.

**EXPECTED LENGTH OF TRIAL**

Plaintiff expects trial to last approximately three dayys.

Respectfully submitted,
Frederick Baillargeron,
By his attorney,

/s/ Robert Caron

Robert J. Caron, 5735
55 Bradford Street, Ste 203
Providence, RI 02903
Phone (401) 621-8600
Fax (401) 274-1400
Email: rcaron@caronolenlaw.necoxmail.com

**CERTIFICATION**

I hereby certify that this document has been filed electronically on November 14th, 2006, and is available for viewing and downloading form the ECF system.